By the Court, Cowen, J.
It is of the nature of the policy in question that it limits the vessel to no geographical track. It is impossible therefore to make out a defence on the ground of a deviation, in the ordinary sense of the word. Nor can any particular trip or voyage be regarded as having the effect of a deviation, unless it be undertaken in fraud of the policy. If the vessel be at sea when the terminus arrives, steering for *123 any port in whatever direction, which the owner or charterer may deem most fit for the purposes of his business—he being governed in his views by considerations of business—the condition has then arisen on which the policy must be deemed to attach for the ulterior term or voyage which the underwriters have seen fit to prescribe. That, in the present case, was genera], till arrival at her port of destination in the United States. That she happened to be destined to such a port by wray of Newcastle, was the result of her inability to procure a proper cargo for the United States at Rotterdam. Had the master fraudulently or perhaps idly and unnecessarily, at this last moment of the year, protracted his voyage, thus incurring the peril of winter in a northern sea, the question would have been different. But the vessel being fairly governed in her course according to the exigencies of trade, the policy renewed itself, wherever she was found at sea, pursuing whatever destination. True, under the terms of the policy in question, it might have been deemed a deviation to go from Newcastle to any port not on her way to the United States; and she did not. The reason of renewals like this, I take it, rests on the fact that when the time first limited expires, the insured knows not where his vessel may be, nor for what port she may be steering at the moment; and so cannot well procure a new policy. The intention, therefore, is, that the policy should renew itself as one upon time ; that its original character should be continued still on a voyage round, if it happen that the vessel be at the moment engaged in the prosecution of such a voyage.
But the more important question is, whether this vessel can be considered as having been at sea within the meaning of the policy. She was engaged in the general prosecution of a voyage or series of voyages within the contemplation of the policy. She had sailed from New-Orleans to Cowes, and thence to Rotterdam, whence she was to return home by way of Newcastle. Her going to Rotterdam was one step in her general course. Soon after touching there, the master formed the resolution to proceed to Newcastle, and thence to the United States. Qn *124 the third of October, four days previous to the expiration of the year, he commenced preparations ; and on the fifth, in pursuance of his design, the vessel was moved from a canal into the river Maese, and wuuld have proceeded directly but for the head winds by which she was detained till the eighth. During the sixth and seventh, she was ready to go to Helvoetsluys. Her papers, her pilot, her crew, were at hand. Even the imprisonment of one of the crew, a circumstance relied on by the defendants below, was resorted to as a measure for keeping all her means for sailing so soon as the wind should be favorable. Clearly, counsel are right when they suppose that this is not the case of The American Insurance Company v. Hutton, (24 Wend. 330.) In that case, no voyage round and home was necessarily contemplated by the policy; and the vessel, when the year expired, was lying in port to refit. Nay, she was lying in her port of destination, which, on the words of the policy, as we thought, meant an intermediate port. We thought the words, at sea, were there used in opposition to being in port—not in opposition to being at home. In the case at bar, the vessel was on her passage to the United States, and limited to such a passage by the renewal clause—a passage somewhat round about it is true, Newcastle being one of its stages. In Wood v. The New England Marine Insurance Company., (14 Mass. Rep. 31,) the policy was to be continued if the vessel were at sea, until an arrival at the port of discharge. The vessel sailed for Amsterdam, a port of lading, whence she would of course go to some other port for discharge. She had gone from Beverly, and it was her purpose to return and discharge there. Her voyage, then, was from and to Beverly. While proceeding out, she was arrested by a British privateer, and ordered into Bristol. She was under arrest at or near the port of Bristol when the original time expired ; and was treated by the court as actually in port. They there gave the words a construction which, at first sight, may appear to be remarkably liberal: saying, that a vessel, though detained in port, if she be engaged in the prosecution of a voyage within *125 the words of the policy, is yet to be deemed at sea. They held the words, at sea, equivalent to the words, “on her voyageand that she was none the less on her voyage, because accidentally detained. In The American Insurance Company v. Hutton, the words words were different, viz. port of destination, which the vessel had reached. Her voyage had ended, and the perils of the voyage had of course ended with it, when the time for renewal came. She was neither literally nor constructively at sea. She was in fact on her voyage round, but the policy did not look beyond the short voyage which had ended. The policy in 14 Mass.. Reports looked not only out to the port of lading, but back to Beverly, the port of discharge ; hence Parker, C. J. said, she would have been protected even if she had been captured on her return.
In Bowen v. The Hope Insurance Company, (20 Pick. 275,) the words were the same; viz. at sea, and on, to the port of destination and discharge. The vessel was destined round from Rotterdam to Bangor, for a cargo to be delivered at Boston ; and was, when the year terminated, lying several miles below Bangor, ready to sail, but the head winds prevented her going out of the straits. She was adjudged to have been at sea.
I have been unable to distinguish the case at bar, in principle, from the cases decided by the learned court in Massachusetts ; and we were very far from intending to impugn the doctrine advanced in those cases, by what we said or decided in The Am. Ins. Co. v. Hutton. I can scarcely see why I am called upon to make this remark, after recurring to what I said in delivering the opinion in that case. It goes throughout on a distinction from the Massachusetts cases, both as to the voyage contemplated by the policy and the condition of the ship. It is certainly not necessary to say here, whether being in port preparing to prosecute the voyage, and not in a condition to sail at the moment, would be sufficient. Here the vessel was in the river ready to sail. She was indeed to take her papers, her imprisoned seaman, her pilot, and a paper in exchange on arriving at Helvoetsluys, preparatory to entering the *126 broad sea. But all these were matters of course, and just as much at the master’s pleasure as weighing anchor or unfurling the sails. The procuring of the whole was a mere manipulation of the voyage ■ and like other acts about the vessel would have been done, had the wind permitted. Whether the water was salt or fresh, or the sea broad or narrow, is not the question. In this particular instance we might speak of the vessel as being almost geographically at sea, because lying in that part of the ocean which the Dutch left when they “ scooped out their empire but the case does not depend on such local considerations. That the vessel has moved on the prosecution of the voyage, whether in the sea, or an arm of the sea, whether in a a river or a canal communicating with the sea, enables us to say she is on her passage, and exposed to the perils of such passage. This vessel had sailed within the case of Bond v. Mult, (Cowp. 601, 607.) Lord Mansfield there mentions a ship as having commenced her voyage, though she had barely begun to sail, and was stopped by an embargo. Departure is a word of different meaning. It imports an effectually leaving of the place behind. If the vessel be detained or driven back, though she may have sailed, there is no departure. (Moir v. The Royal Exchange Assurance Company, 6 Taunt. 241 ; 4 Camp. 84, S. C., 3 Maule & Selw. 461, S. C.) In Ridsdale v. Newnham, (3 Maule & Selw. 456,) the ship wras not ready. She had gone from Portneuf to Quebec in contemplation of there completing her complement of men. Hence it was said she had not sailed. Lord Ellenborough C. J., conceded that had the ship got her clearances and been equipped for the voyage, the case would have been different. (Lang v. Anderson, 3 Barn, & Cress. 495, S. P.) In short, the least locomotion with readiness of equipment and clearance satisfies a warranty to sail. (Pettigrew v. Pringle, 3 Barn, Adolph. 514.) In Cockrane v. Fisher, (1 Crompt., Mees. & Rose. 809,) the ship was warranted not to sail for British North America, after the 15th of August. On that day she was lying in Dublin harbor, at the custom house dock. This opens into the river Liffey which *127 is part of the harbor. At half past 2 P. M. and as soon as she could be got ready, she was hauled out of the dock into the river with an intention of proceeding to Quebec. Held, a sailing, though she was detained by a strong wind from the S. S. E. which being right up the river, no sail could be hoisted. She was warped down the river about half a mile where she unavoidably went aground, and remained till the next day. This case was decided by the exchequer chamber, and well considered on all the authorities. Lord Denman, C. J. delivered the opinion ; and declared the result as follows, (p. 818 :) <£ As the facts appear to us clearly to shew that she was in the prosecution of her voyage on the 15th of August, having made a movement, though in the river, for the purpose of proceeding to sea, and over the sea to North America, we think the warranty has not been broken.” The case indeed admits she was not at sea ; but that is in the primary sense of the words. The American cases, as far as they have gone, concur in giving them a secondary sense when used for the purpose of continuing a time policy. No such words in that connection have, that I am aware, been presented for judicial construction in England. I suppose they are unknown in the time policies of that country. Most of the cases cited in Cochrane v. Fisher were also cited by the court of Massachusetts in Bowen v. The Hope Insurance Company ; and they held, that sailing, and being at sea, or on a passage, all mean the same thing. The previous case in that court we have seen had gone as far and even farther. On the argument in this court the counsel for the company conceded a secondary sense when the words are used in the connection and for the purpose indicated by the policy in question. We know they are often so used in common parlance. A friend is spoken and thought of as being at sea, when he has gone a long voyage, and, as exposed to the perils of the voyage, without reference to the fact of his being at the time in or out of some harbor. So of an exploring ship or squadron, until its return home; and an insurance upon either as at sea and engaged in a voyage of exploration, would, *128 I apprehend, in universal understanding, comprehend the perils of harbors and rivers, as well as those of the ocean. In this secondary sense, and to answer the intent of the parties, the court thought in Wood v. New England Marine Insurance Company, that a vessel absent on a voyage should be taken to be at sea within those words as used in the policy before us.
On the whole we feel no serious difficulty in saying that, inasmuch as the Montpelier was not only on her voyage, but had actually sailed, the charge of the court below was right and the judgment should be affirmed.
Bronson J. dissented.
Judgment affirmed.